UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EMMANUEL PIMENTEL, et al.,
individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

                                        Case No.: 2:23-cv-544-JLB-KCD

STRENGTH20, LLC, GLOBAL
STRATEGIES CONSULTANT
GROUP, CORP., ROMMEL A.
ARIZA and FLORIDA
STRUCTURAL GROUP, INC.

      Defendants.
_____/

## ORDER

Before the Court is Defendant Florida Structural Group, Inc.'s Motion to Dismiss Second Amended Fair Labor Standards Act Complaint and Demand for Attorney Fees. (Doc. 65). Plaintiffs filed a response. (Doc. 71). For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

### BACKGROUND[1]

Emmanuel Pimentel, Rancel Moreno, Johnny Cuevas, Ramon Cuevas, Adam Orozco, and Irvin Maldonado, individually and on behalf of others similarly situated

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in the Second Amended Complaint. (*See* Doc. 46).

1

("Plaintiffs"), are security guards.[2] (Doc. 46 at ¶¶ 2–8). They each provided security services to "disaster-stricken properties" on or near Sanibel Island, Florida, and Fort Myers Beach in the wake of Hurricane Ian. (*Id.*)

Under the terms of the Security Guard Service Agreement, Florida Structural Group, Inc. ("FSG") contracted for "security service man-hours" from Defendants Strength20 and Global Strategies and agreed to pay between $90 and $95 per security guard hour provided. (*Id.* at ¶ 19). After Hurricane Ian, Defendants Strength20 and Global Strategies employed Plaintiffs to protect Defendant FSG's job sites around Sanibel Island and Fort Myers Beach. (*Id.* at ¶¶ 10, 13, 18, 31).

According to the Second Amended Complaint (the "SAC"), all, or substantially all, of the work provided by Plaintiffs under their employment contracts with Strength20 and Global Strategies was "in furtherance" of the Security Guard Service Agreement. (*Id.* at ¶ 21). Accordingly, Plaintiffs assert that they are third-party beneficiaries of the Security Guard Service Agreement. (*Id.* at ¶ 24).

In accordance with their contracts, Plaintiffs were to be paid a daily rate of $780.00 per day, plus a daily allowance for lodging. (*Id.* at ¶ 31). The SAC alleges

---

[2] The following is the collective definition permitted by the Court: "(1) Security guards employed by Defendants St[r]ength20 and Global Strategies between September 28, 2022 and February 28, 2023, (2) to secure 'job sites owned or controlled by Defendant FSG' on, or near, Sanibel Island and Fort Myers Beach, (3) who were not paid minimum and overtime wages." (Doc. 97 at 11–12 (citing Doc. 94; Doc. 94-3 at 2)).

that Defendants "failed to pay as required under the contract, failing to pay anything for the last several weeks of employment" and also failed to pay "at the premium factor rate of 1.5 for overtime hours worked in excess of 40 during all workweeks." (*Id.* at ¶ 32). According to the SAC, Defendants Strength20, Ariza, and Global Strategies have indicated that they have not paid Plaintiffs because Defendant FSG has failed to pay them in accordance with the Security Guard Service Agreement. (*Id.* at ¶ 25).

Plaintiffs now sue Defendants for violations of the Fair Labor Standards Act ("FLSA") (*see id.* at ¶¶ 35–47) and the Florida Minimum Wage Act ("FMWA") (*see id.* at ¶¶ 48–51). They also sue for breach of employment contract (*see id.* at ¶¶ 52–56), unpaid wages under common law (*see id.* at ¶¶ 57–58), quantum meruit (*see id.* at ¶¶ 59–62, 73–76), breach of the Security Guard Service Agreement (*see id.* at ¶¶ 63–68), and breach of disaster relief contracts (*see id.* at ¶¶ 69–72).

Defendant FSG requests that the Court dismiss the following claims: Count I (FLSA violation), Count II (FLSA violation), Count III (violations of the Florida Constitution and Florida Minimum Wage Act), Count VII (breach of Security Guard Service Agreement), Count VIII (breach of disaster relief contracts), and Count IX (quantum meruit). (Doc. 65 at 2–4).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require "detailed factual allegations" but

demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (citation omitted).

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant*, 187 F.3d at 1273 n.1 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). To warrant dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## DISCUSSION

### I. Whether Plaintiffs are employees of Defendant FSG for the purposes of the FLSA and FMWA claims.

Defendant FSG first argues that Plaintiffs' FLSA claims (Counts I and II) must be dismissed against FSG because it is not Plaintiffs' employer and that Plaintiffs' Florida Minimum Wage Act ("FMWA") claim (Count III) must be dismissed against Defendant FSG because Plaintiffs failed to allege that they complied with the FMWA pre-suit notice requirement. (Doc. 65 at 5–9).

Under the FLSA, to "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). And the definition of "employer" includes "any person acting directly or

4

indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). "The Supreme Court has described the definition of 'employ' as one with 'striking breadth.'" *Blanco v. Samuel*, 91 F.4th 1061, 1080 (11th Cir. 2024) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). Indeed, the Eleventh Circuit has explained that the "statutory 'suffer or permit to work' definition is one of the broadest possible delineations of the employer-employee relationship." *Id.* (quoting *Garcia-Celestio v. Ruiz Harvesting, Inc.*, 843 F.2d 1276, 1287 (11th Cir. 2016) (quotation marks omitted)).

"Under this expansive approach, an entity is deemed to employ a worker where, as a matter of 'economic reality' and under all the circumstances, the worker is 'economically dependent' on the hiring entity." *Id.* (quoting *Garcia-Celestino*, 843 F.3d at 1287 (quotation marks omitted)). "Any label the parties may place on their relationship and any contracts that may govern that relationship do not control whether an employer-employee relationship exists." *Id.* (citing *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013)). "Rather we answer that question by homing in on whether the work done, in its essence, follows the usual path of an employee." *Id.* (quoting *Scantland*, 732 F.3d at 1311 (quotation marks omitted)).

The Eleventh Circuit utilizes the eight *Aimable* factors to consider whether an entity qualifies as an employer under the FLSA. *See id.* These factors include:

> (1) the nature and degree of control of the worker; (2) the degree of supervision, direct or indirect of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly,

5

> to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and the payment of wages; (6) ownership of facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities.

*Id.* (quoting *Garcia-Celestino*, 843 F.3d at 1294).  In some situations, courts also consider the opportunity for profit and loss, permanency and exclusivity of employment, and the degree of skill required to perform the job.  *See Aimable v. Long and Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994).

The Eleventh Circuit has also outlined "five overarching principles that inform [the Court's] application of the *Aimable* factors." *Blanco*, 91 F.4th at 1080. First, courts "focus on the worker's relationship with each putative employer" instead of "fixating on whether the worker is relatively more dependent on one putative employer than the other."  *Id.* (citing *Garcia-Celestino*, 843 F.3d at 1294). Second, "no one factor is dispositive" in the analysis.  *Id.* (citing *Garcia-Celestino*, 843 F.3d at 1294).  Third, the weight given to each factor "depend[s] upon the extent to which it is probative of the worker's economic dependence on the putative employer under the circumstances." *Id.* (citing *Garcia-Celestino*, 843 F.3d at 1294). Fourth, the evidence should be considered "holistically and qualitatively." *Id.* at 1081 (citing *Garcia-Celestino*, 843 F.3d at 1294).  Finally, the Eleventh Circuit has recognized that "common law principles of employment have no bearing" on the analysis.  *Id.* (citing *Garcia-Celestino*, 843 F.3d at 1294).

FSG claims that the SAC "does not plead any of the required factors to properly allege that FSG was a joint employer of the Plaintiffs." (Doc. 65 at 7).  The

6

Court agrees.  The SAC alleges that:

> By virtue of the nature and extent of control which Defendants FSG maintained over all work performed under the 'Security Guard Service Agreement', their ownership and/or plenary control over the work sites to be secured, their degree of direct and indirect supervision of the work performed by Plaintiffs, their right and actual practice to directly and indirectly control and affect the terms and conditions of Plaintiffs' employment under the 'Security Guard Service Agreement', and the delegation of responsibilities among the various Defendants under the 'Security Guard Service Agreement', . . . FSG was a joint employer of the Plaintiffs within the meaning of the FLSA.

(Doc. 46 at ¶ 26).  Merely restating the elements that courts review to determine whether an entity is an employer under the FLSA is not enough to survive a motion to dismiss.  *See Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) ("'[T]hreadbare recitals of the elements of a cause of action' and 'conclusory statements' are insufficient.") (quoting *Iqbal*, 556 U.S. at 678).

"The FMWA is to be interpreted as consistent with the FLSA."  *Llorca v. Sheriff, Collier County, Florida*, 893 F.3d 1319, 1328 (11th Cir. 2018); *see also* Fla. Stat. § 448.110(3) ("Only those individuals entitled to receive the federal minimum wage under the federal [FLSA], as amended, and its implementing regulations shall be eligible to receive the state minimum wage pursuant to s. 24, Art. X of the State Constitution and this section.").  Because Plaintiffs' FMLA claims against FSG fail, so do their FMWA claims against FSG.  *See Gonzalez v. Rockwater Dev., LLC*, No. 6:20-cv-270-Orl-41EJK, 2021 WL 2929796, at *5 (M.D. Fla. Feb. 3, 2021) ("[T]o state a claim under the FMWA, Plaintiff must establish that she was employed by an employer covered by the FLSA during the period involved . . . .").

Moreover, Florida Statute § 448.110 provides that "prior to bringing any claim for unpaid minimum wages pursuant to [the FMWA], the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action." Fla. Stat. § 448.110(6)(a). The notice must "identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice." *Id.* The notice gives the employer fifteen calendar days after receipt to "pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved." *Id.* § 448.110(6)(b).

The SAC fails to allege compliance with section 448.110's notice requirement. "Courts have uniformly held that this notice is a condition precedent to bringing suit." *Santiago v. ACA Camp Geneva, Inc.*, No. 5:17-cv-124-Oc-30PRL, 2017 WL 2578710, at *2 (M.D. Fla. June 14, 2017) (collecting cases). Thus, the FMWA claim may also be dismissed on this independent ground.

For the reasons set forth above, Counts I, II, and III against FSG are dismissed without prejudice and with leave to amend.

**II.    Whether Plaintiffs are intended third-party beneficiaries.**

Third-party beneficiary status allows a non-contracting party to enforce a contract against a contracting party.

> "Florida courts have recognized three types of third party beneficiaries to a contract: (1) donee beneficiaries; (2) creditor beneficiaries; and (3) incidental beneficiaries.' *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*,

8

> 400 F.2d 465, 471 (5th Cir. 1968) . . . The key distinction is that the first two categories are classes of "intended" beneficiaries, who have a right to sue for enforcement of the contract, whereas the third category, "third party beneficiaries recognized as incidental beneficiaries[,] have no enforceable rights under a contract." *Id.* . . . The intent of the parties is the key to determining whether a third party is an intended (*i.e.*, donee or creditor) or only an incidental beneficiary. *See, e.g., Marianna Lime Prods. Co. v. McKay*, 147 So. 264, 265 (Fla. 1933).

*Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005). Under Florida law, "[t]he contracting parties' intent to benefit the third party must be specific and must be clearly expressed in the contract in order to endow the third-party beneficiary with a legally enforceable right." *Id.* at 982 (citing *Am. Sur. Co. v. Smith*, 130 So. 440, 441 (Fla. 1930)). "A party is an intended beneficiary only if [both] parties to the contract clearly express . . . an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Caretta Trucking, Inc. v. Cheoy Lee Shipyard, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994) (citations omitted). In determining whether the contracting party intends to benefit a third party, Florida law analyzes the "nature or terms of a contract." *Esposito v. True Colors Enters. Constr., Inc.*, 45 So. 3d 554, 555 (Fla. 4th DCA 2010).

To establish an action for breach of a third-party beneficiary contract, Plaintiffs must allege and prove four elements: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." *Networkip, LLC v.*

9

*Spread Enters., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006) (citation omitted).

Plaintiffs assert breach of two alleged contracts of which they are not a party. First, in Count VII, they argue that Defendants breached the Security Guard Service Agreement, alleging:

> There is a clear intent between the parties . . . that payments due thereunder from Defendant FSG are on account of specific hourly rates 'for each armed officer' and for each 'supervisor' for the work actually performed by security guards who perform the services contracted for, and that they are required and intended to be paid for the services they provide in furtherance of the Security Guard Service Agreement.

(Doc. 46 at ¶ 64).

Defendant FSG argues that "[t]here are no statements in the Agreement that express in any manner that the Plaintiffs or guards are to be paid" and, accordingly, Plaintiffs are not intended beneficiaries of the Security Guard Service Agreement. (Doc. 65 at 10).

The Court has reviewed the Security Guard Service Agreement attached to the SAC. (Doc. 46-2). It states the following in relevant part:

> [FSG] shall pay STRENGTH20 the base rate of $90.00 USD hourly rate for each armed officer, and $95.00 USD hourly rate for each supervisor provided. [FSG] will provide lodging to every officer assigned.

(Doc. 46-2 at 2).

At the very least, based on the plain language in the agreement and the allegations in the SAC, the armed officers were intended third-party beneficiaries of that Security Guard Service Agreement because it expressly provides that

Defendant FSG will provide lodging to the armed officers, which is a direct benefit to the officers. (*Id.*)

Unless it "clearly appears as a matter of law that a contract cannot support the action alleged, a complaint should not be dismissed on motion to dismiss for failure to state a cause of action." *Vienneau v. Metro. Life Ins. Co.*, 548 So. 2d 856, 860 (Fla. 4th DCA 1989). "A cardinal rule is that where the language used in a contract is ambiguous or unclear, the court may consider extrinsic matters not to vary the terms of the contract, but to explain, clarify or elucidate the ambiguous language with reference to the subject matter of the contract, the circumstances surrounding its making, and the relation of the parties." *Id.* at 859.

At this stage of the case, and on this motion, where the Court's role is to test the sufficiency of the complaint rather than hear evidence, the Court is satisfied that the Security Guard Service Agreement is, at the very least, ambiguous on the contracting parties' intent to benefit third parties. Accordingly, the Court will not dismiss Count VII.

In Count VIII, the SAC asserts that Plaintiffs performed work in furtherance of certain "Disaster Relief Contracts" entered into between FSG and certain Homeowners' Associations and/or other government agencies or political subdivisions for the performance of disaster relief and property protection work in the aftermath of Hurricane Ian. (Doc. 46 at ¶ 69).

FSG contends that Plaintiffs cannot establish that a contract existed and that Plaintiffs speculate that FSG must have entered into contracts with unknown

11

government agencies or private property owners.  (Doc. 65 at 10–11).  Indeed, Plaintiffs' allegations with respect to the Disaster Relief Contracts are made "upon information and belief."  (Doc. 46 at ¶ 69).  Allegations made "upon information and belief" are not generally taken as true if not supported by sufficient facts.  *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551).  But "[p]leading on information [and] belief is still permissible where . . . the facts are peculiarly within the possession and control of the defendant."  *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).  Here, contracts entered into between FSG and any Homeowners' Association, government entity, and/or political subdivisions would be peculiarly within the possession and control of Defendant FSG.  Accordingly, the Court accepts the allegations in the SAC as true even though they were pleaded "upon information and belief."

Although the Court is somewhat skeptical that Plaintiffs will be able to show that they are third-party beneficiaries to any Disaster Relief Contracts, the Court declines to dismiss Count VIII at this stage of the case.

### III. Whether Plaintiffs' *quantum meruit* claim against FSG must be dismissed because Plaintiffs have a written contract.

"The doctrine of quantum meruit, also called a contract implied in fact, imposes liability, in the absence of an express agreement, based on a tacit promise, one of that is inferred in whole or in part from the parties' conduct, not solely from their words." *F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021) (quotation omitted).  "To satisfy the elements of

quantum meruit, the plaintiff must prove that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *Id.* (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999) (internal quotation marks omitted)).

FSG argues that Plaintiffs cannot assert a quantum meruit claim because there is an express contract between Plaintiffs and Defendant Global Strategies. (Doc. 65 at 11–12).

True, "[a]s a general principle, a plaintiff cannot pursue an implied contract theory, such as . . . quantum meruit, if an express contract exists." *F.H. Paschen, S.N. Nielsen & Assocs. LLC*, 311 So. 3d at 49 (collecting cases). A plaintiff may, however, "properly plead alternative counts for quantum meruit and breach of an express contract." *S&B/Bibb Hines PB 3 Joint Venture v. Progress Energy Florida, Inc.*, Case No. 8:08-cv-439-JDW-MAP, 2008 WL 11336621, at *6 (M.D. Fla. Oct. 3, 2008) (citing *Manicini Enterps., Inc. v. Am. Exp. Co.*, 236 F.R.D. 695, 698 (S.D. Fla. 2006)).

Moreover, in this case, the "express contract" FSG points to is not between Defendant FSG and Plaintiffs. The contract is between Plaintiffs and Defendant Global Strategies. (Doc. 65 at 11–12). Thus, it cannot be said that any agreement between Defendant FSG and Plaintiffs was governed by that contract. *See Snyderburn v. Moxley*, 652 So. 2d 945, 947 (Fla. 5th DCA 1995) (citation omitted)

("[W]here an express agreement exists, *quantum meruit* is not available; the rights and obligations of the parties are governed by the agreement.").

Accordingly, the Court declines to dismiss Count IX, the quantum meruit claim, at least at this time.

## CONCLUSION

For the reasons set forth above, Defendant FSG's Motion to Dismiss (Doc. 65) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent that Counts I, II, and III are dismissed against Defendant FSG but **DENIED** as to all other relief sought. Should Plaintiffs wish to continue to pursue Counts I, II, and III against Defendant FSG, however, they may file a further amended complaint no later than three weeks from the date of this Order.

**ORDERED** in Fort Myers, Florida on August 27, 2024.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE